## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **ALEXANDRIA H. QUINN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| *vs.* | ) | **Civil Action No. 3:14-cv-1033-ALB-GMB** |
| | ) | |
| **CITY OF TUSKEGEE, ALABAMA;** | ) | |
| **former OFFICER LEVY KELLY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## FIRST AMENDED COMPLAINT

Comes Now Plaintiff Alexandria H. Quinn (hereinafter "Plaintiff" or "Quinn"), by and through counsel, and complains against Defendants as follows:

## I.    Jurisdiction

1.    This Court has jurisdiction over the claims asserted in this First Amended Complaint under 28 U.S.C. § 1343(a)(3) because Plaintiff seeks to redress the deprivation, under color of State law, statute, ordinance, regulation, custom or usage, of her rights, privileges, and immunities secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens of the United States.  This case is brought pursuant to 42 U.S.C. § 1983.  This Court has supplemental jurisdiction over the counts asserting claims under State law under 28 U.S.C. § 1367.

II.    **Parties and Venue**

2.    Plaintiff is a twenty-six year old African American woman who is a citizen of the United States and the State of Alabama.  At all times material to the averments in this First Amended Complaint, Plaintiff resided in the City of Tuskegee, Macon County, Alabama.

3.    The City of Tuskegee, Alabama (hereinafter "the City") is a municipal corporation located in Macon County, Alabama.

4.    Defendant Levy Kelly (hereinafter "Defendant Kelly") is a forty-five year old African American man who is a citizen of the United States and the State of Alabama.  At all times material to the averments of this First Amended Complaint, Defendant Kelly was employed by the City of Tuskegee, Alabama as a police officer.  Defendant Kelly is sued in his individual capacity.

III.    **Facts**

5.    On December 27, 2005, Defendant Kelly was employed by the City as a police officer.  When Defendant Kelly was hired by the City, Lester Patrick was Chief of Police and approved Defendant Kelly's employment as a police officer even though he knew that Defendant Kelly had been convicted in 2004 in Montgomery Circuit Court of the misdemeanor offense of impersonating a public servant and was sentenced to three months in the county jail, suspended, and twelve months on probation.

2

6.      While he was on duty as a police officer for the City in November, 2007, Defendant Kelly met Plaintiff who was fourteen years old at the time.  On the day that Defendant Kelly met Plaintiff and while he was in uniform as a police officer for the City, Defendant Kelly flirted with Plaintiff and had inappropriate and illegal sexual contact with Plaintiff.

7.      On at least one occasion while Plaintiff was fourteen years old, Defendant Kelly had illegal and inappropriate sexual contact with Plaintiff.  When Defendant Kelly had illegal and inappropriate sexual contact with the Plaintiff while she was fourteen years old, Defendant Kelly was wearing his uniform issued to him by the City and was on duty as a police officer for the City.

8.      After Defendant Kelly's first illegal and inappropriate sexual contact with Plaintiff while she was fourteen years old, Defendant Kelly continued to call Plaintiff to arrange to have sex with her.

9.      In April, 2008, when Plaintiff was fifteen years old, Defendant Kelly arranged to meet Plaintiff at the Tuskegee Inn where they engaged in sex.

10.      On many other occasions, Defendant Kelly drove his City patrol vehicle to meet with Plaintiff at the old county hospital to have sex with her in his City patrol vehicle while he was in uniform and on duty as a police officer for the City.

11.      Defendant Kelly had illegal and inappropriate sexual contact with Plaintiff on at least fifteen occasions while she was fifteen and sixteen years old.  On almost all of these

3

occasions, Defendant Kelly and Plaintiff had sex in the City patrol vehicle issued to Defendant Kelly by the City while he was in uniform and on duty as a City police officer.

12.     During the period of time when Plaintiff and Defendant Kelly were engaged in an illegal and inappropriate sexual relationship, Defendant Kelly was living with a woman to whom he was engaged to be married.  On one occasion during this period of time, Plaintiff went to Defendant Kelly's residence to talk to him.  Defendant Kelly became upset with Plaintiff because she came to his residence and he called Tuskegee Police Officer Wesley McLain to come to his residence to make Plaintiff leave.  Upon his arrival at Defendant Kelly's residence, Officer McLain instructed Plaintiff to leave Defendant Kelly's residence and threatened to arrest her for criminal trespass if she returned.  Together, the above-described actions of Defendant Kelly and Officer McLain concealed from Defendant Kelly's fiancee knowledge of Defendant Kelly's illegal and inappropriate sexual relationship with Plaintiff.  On another occasion around the time Defendant Kelly injured his knee in December, 2011, Defendant Kelly sent Tuskegee police officer Washington to tell Plaintiff that Defendant Kelly believed she was involved with the recent theft of his motorcycle.

13.     During the period of time in which Defendant Kelly and Plaintiff were engaging in illegal and inappropriate sex, Defendant Kelly called Plaintiff from the Tuskegee Police Department using a telephone owned by the City while he was on duty and Defendant Kelly received calls from Plaintiff using a telephone owned by the City at the Tuskegee Police Department while he was on duty.

4

14.     Defendant Kelly instructed police dispatchers at the Tuskegee Police Department to lie to Plaintiff when she called him about whether he was working when Defendant Kelly did not want to see or speak to Plaintiff.  Police dispatchers followed Defendant Kelly's instructions to lie to Plaintiff about whether he was working when he instructed them to do so.

15.     As a result of the numerous calls to and from the Tuskegee Police Department between Plaintiff and Defendant Kelly, and Defendant Kelly's call to Officer McLain to report Plaintiff's presence at his residence, police dispatchers, other police officers, and police supervisors at the Tuskegee Police Department, including Police Chief Lester Patrick, knew that Defendant Kelly was involved in a sexual relationship with Plaintiff and other minor children in Tuskegee.  Notwithstanding their knowledge of Defendant Kelly's sexual involvement with Plaintiff and other minor children in Tuskegee, Defendant Kelly was not disciplined, counseled, advised, and was given no training by his police supervisors regarding his illegal and inappropriate sexual relationship with Plaintiff or other minor children in Tuskegee.  No action was taken against Defendant Kelly by his police supervisors to prevent him, while on duty as a Tuskegee police officer, from continuing to engage in the illegal and inappropriate sexual relationship with Plaintiff and other minor children in Tuskegee.

16.     In 2010, when Plaintiff was seventeen years old, she broke off her relationship with Defendant Kelly because he raped her anally.  Despite their break-up, Defendant Kelly

continued to call Plaintiff, to follow her, and to harass her for an extended period of time because he did not want their relationship to end.

17.   On October 13, 2012, while he was on duty in his City police vehicle, Defendant Kelly approached Plaintiff while she was standing beside her car looking for her cell phone in the floor board of the passenger side of her parked car, which was a Ford Taurus owned by Plaintiff's father.  Defendant Kelly parked his police vehicle on the passenger side of the car beside which Plaintiff was standing and rolled down his window. From his Tuskegee police vehicle, without any warning and without Plaintiff having engaged in any threatening or aggressive behavior towards Defendant Kelly, he sprayed mace or pepper spray on her as she stood on the passenger side of the Ford Taurus, drenching her with the noxious, irritating, and burning mace or pepper spray.

18.   While Plaintiff was suffering from the adverse effects of the mace or pepper spray, Defendant Kelly placed Plaintiff in handcuffs with her hands behind her back, and locked her in the back seat of his police vehicle where she was detained.  Plaintiff screamed at Defendant Kelly saying, "I can't breathe."  In spite of Plaintiff's pleas, Defendant Kelly did not wash or wipe off the mace or pepper spray from Plaintiff's face.  Plaintiff continued to suffer from the adverse effects of the mace or pepper spray.

19.   Defendant Kelly then began to search the interior of the Ford Taurus without Plaintiff's permission and said to Plaintiff, "I know I am going to find weed."  Plaintiff continued to suffer from the adverse effects of the mace or pepper spray while Defendant

Kelly searched the Ford Taurus.  Defendant Kelly found a bottle of beer in the Ford Taurus and opened it so that it would appear that Plaintiff had consumed it while she was in the Ford Taurus at the time of the incident.

20.     Next, Defendant Kelly called other police officers to the scene using the radio in his patrol vehicle.  Defendant Kelly placed Plaintiff under arrest on the charge of being a minor in possession of alcoholic beverages.  When other Tuskegee police officers arrived at the scene, Lt. Kendall Locure washed Plaintiff's face with a bottle of water because she continued to suffer from the adverse effects of the mace or pepper spray.  While Lt. Locure was washing Plaintiff's face, she told him about her prior sexual relationship with Defendant Kelly and pleaded with him not to let Defendant Kelly take her in his police vehicle to the Tuskegee police station because she feared that he would harm her.

21.     Plaintiff explained to the other Tuskegee police officers at the scene that Defendant Kelly had no reason to spray her with mace or pepper spray and that he had no reason to arrest her.  Plaintiff further stated, "I am 105 pounds.  It does not take mace to restrain me."  Plaintiff told the other Tuskegee police officers at the scene that Defendant Kelly had sprayed her with mace because of a grudge.

22.     Even though Lt. Locure and the other Tuskegee police officers knew about Defendant Kelly's past illegal and inappropriate sexual relationship with Plaintiff, Defendant Kelly's supervisor and the other Tuskegee police officers allowed him to leave the scene with

7

Plaintiff in handcuffs in the back of his police vehicle without any other police officer or police supervisor in the police vehicle with them.

23.     After Defendant Kelly left the scene of Plaintiff's arrest, he did not deliver Plaintiff directly to the Tuskegee police station.  Instead, Defendant Kelly drove Plaintiff around for about fifteen minutes before he took her to the Tuskegee police station.  During the drive to the police station, Defendant Kelly told Plaintiff that he could have killed her. Then Defendant Kelly said that this was the last time he was saving her.

24.     From the time Defendant Kelly sprayed her with mace or pepper spray until she was finally taken inside the police station and throughout her interrogation by Defendant Kelly, Plaintiff feared that Defendant Kelly was going to rape her or otherwise harm her. After the passage of more time, one of the police officers called an ambulance because Plaintiff continued to complain that she could not breathe.  When the ambulance arrived, an emergency medical technician washed Plaintiff's face with saline water.  The ambulance did not transport Plaintiff to any medical facility for further treatment.

25.     At the police station, Defendant Kelly interrogated Plaintiff alone in a room for two hours.  Initially, Lt. Locure was in the interrogation room with Plaintiff and Defendant Kelly but he left even though Plaintiff asked him not to leave her alone with Defendant Kelly.  In spite of the fact that other police officers and police supervisors knew of Defendant Kelly's prior illegal and inappropriate sexual relationship with Plaintiff, they allowed Defendant Kelly to interrogate and detain Plaintiff alone for two hours on a

8

misdemeanor charge of being a minor in possession of alcoholic beverages.  After Plaintiff's interrogation was over, a Tuskegee police officer took her home.  Plaintiff's car was towed and impounded.  The charge against Plaintiff for being a minor in possession of alcoholic beverages was later dismissed.

26.     At the time of Plaintiff's encounter with Defendant Kelly on October 13, 2012, Plaintiff took no actions which would have put Defendant Kelly in fear of bodily harm, Plaintiff had no weapon of any kind on her person, and she made no threatening remarks or statements to Defendant Kelly.  Plaintiff was standing beside her father's car, parked, when Defendant Kelly approached her in his police vehicle.  Contrary to Defendant Kelly's report of the incident with Plaintiff, the position of Defendant Kelly's police vehicle relative to Plaintiff's vehicle did not prevent Defendant Kelly from exiting his vehicle on the driver's side.

27.     At the time of Plaintiff's encounter with Defendant Kelly on October 13, 2012, Plaintiff was not consuming any alcoholic beverages, was not intoxicated, and was unaware that her father had left an unopened beer in his car.

28.     Knowing that neither the City nor Chief Lester Patrick would prevent him from harming Plaintiff, Defendant Kelly used his authority granted to him under State law as a Tuskegee police officer to attack Plaintiff with mace or pepper spray and to humiliate her for personal reasons.

29.     As a proximate result of Defendant Kelly's actions and the inaction of Chief Lester Patrick and the City in failing to discipline, train, supervise, or otherwise prevent Defendant Kelly from continuing to abuse his authority under State law as a Tuskegee police officer, Plaintiff has suffered physical injury, pain and suffering, and continues to suffer emotional and mental distress and anguish, post-traumatic stress disorder, depression, and other psychological conditions related to Defendants' conduct described hereinabove.

30.     Further, as a result of the injuries she has sustained related to Defendants' conduct described hereinabove, Plaintiff has sought and obtained medical and psychological treatment for which she has incurred costs and expenses.

31.     In December, 2012, Defendant Kelly was arrested and jailed for approximately a year on criminal charges involving his illegal and inappropriate sexual relationship with Plaintiff and other minor children.   In February, 2014, Defendant Kelly was indicted in Macon County, Alabama on multiple felony counts related to his illegal and inappropriate sexual relationship with Plaintiff.   In September, 2014, Defendant Kelly was indicted in Butler County, Alabama on multiple felony counts related to his illegal and inappropriate sexual relationship with another minor female.

## IV.     Count 1—Deprivation under Color of State Law of Rights, Privileges and Immunities Secured by the United States Constitution

32.     Plaintiff re-alleges and incorporates the averments set out in Paragraphs 1-31 of this First Amended Complaint as though fully set out herein.

33.     Defendants have wrongfully and unlawfully deprived Plaintiff of her rights, privileges, and immunities secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens of the United States.

34.     At all times material to the averments of this First Amended Complaint, Defendants acted under color of State law.

35.     Plaintiff has suffered damages as described hereinabove as the proximate result of Defendants' violations of her rights guaranteed to her under the Fourth and/or Fourteenth Amendments to the U.S. Constitution, the deprivation of which is actionable under 42 U.S.C. § 1983.

36.     Plaintiff has suffered damages as hereinabove described as the proximate result of Defendant Kelly's use of his position and authority under State law as a Tuskegee police officer to deprive Plaintiff of her constitutional rights as described hereinabove.

37.     Plaintiff has suffered damages as hereinabove described as the proximate result of Chief Lester Patrick's and the City's deliberate indifference to the risk to her posed by Defendant Kelly by failing, among other things, (1) to supervise Defendant Kelly properly while he was on duty as a Tuskegee police officer, (2) to enforce and/or implement restrictions on the appropriate use of mace and/or pepper spray, (3) to train police officers and police supervisors properly with respect to discipline of a police officer engaged in an inappropriate sexual relationship with a citizen, (4) to train police officers and police supervisors properly with respect to conflicts of interest that arise when a police officer

11

arrests a person with whom he has, or has had, a personal, sexual relationship, (5) to investigate or screen adequately Defendant Kelly's background and employment history before hiring him as a Tuskegee police officer, (6) to take all necessary actions, in light of their knowledge of Defendant Kelly's illegal and inappropriate sexual relationship with Plaintiff, to prevent or remedy the constitutional deprivations described hereinabove.

38.    Plaintiff has suffered damages as hereinabove described as a proximate result of Defendants' deprivations of Plaintiff's constitutional rights.

39.    Defendants acted with deliberate indifference to Plaintiff's constitutional rights in committing the above-described wrongful acts and/or in creating or condoning customs, policies, and practices that proximately resulted in the above-described wrongful conduct which deprived Plaintiff of her constitutional rights.

Wherefore premises considered, Plaintiff requests that the Court order:  (1) the City to pay Plaintiff compensatory and punitive damages for its role in the deprivation of Plaintiff's constitutional rights; (2) Defendant Kelly to pay compensatory and punitive damages for his deprivation of Plaintiff's constitutional rights; (3) the City to undertake appropriate injunctive relief to address the failures set out hereinabove; (4) Defendants to pay Plaintiff's reasonable attorney's fees plus litigation costs incurred in the prosecution of this matter under 42 U.S.C. § 1988; and (5) any other legal or equitable relief the Court deems appropriate.

**V.     Count 2—Assault and Battery**

40.     Plaintiff re-alleges and incorporates the averments set out in Paragraphs 1-31 of this First Amended Complaint as though fully set out herein.

41.     Defendant Kelly committed assault and battery on Plaintiff by engaging in illegal and inappropriate sexual contact with Plaintiff as hereinabove described.

42.     Because of her age, under sixteen years old, Plaintiff was unable to consent, as a matter of law, to engage in sexual intercourse with Defendant Kelly.

43.     The City is vicariously liable for the wrongful conduct of Defendant Kelly.

44.     Plaintiff has suffered damages as hereinabove described as the proximate result of Defendants' wrongful conduct.

Wherefore premises considered, Plaintiff requests that the Court order:  (1) the City to pay Plaintiff compensatory and punitive damages for its wrongful conduct; (2) Defendant Kelly to pay compensatory and punitive damages for his wrongful conduct; (3) the City to undertake appropriate injunctive relief to address the failures set out hereinabove; and (4) any other legal or equitable relief the Court deems appropriate.

**VI.     Count 3—Assault and Battery**

45.     Plaintiff re-alleges and incorporates the averments set out in Paragraphs 1-31 of this First Amended Complaint as though fully set out herein.

46.     Defendant Kelly committed assault and battery on Plaintiff when he sprayed her with mace or pepper spray as described hereinabove.

47.     Defendant Kelly's conduct was unwelcome, highly offensive, and physically damaging to Plaintiff and placed her in apprehension that she would be more physically harmed by Defendant Kelly.

48.     Defendant Kelly lacked any justification to spray Plaintiff with mace or pepper spray.

49.     Defendant Kelly's use of mace or pepper spray on Plaintiff was excessive, unnecessary, unjustified, and improperly motivated by his personal grudge against Plaintiff.

50.     Defendant Kelly acted intentionally and with malice towards Plaintiff.

51.     The City is vicariously liable for the tortious and/or wrongful conduct of Defendant Kelly.

52.     Plaintiff has suffered damages as hereinabove described as the proximate result of Defendants' wrongful conduct.

Wherefore premises considered, Plaintiff requests that the Court order:  (1) the City to pay Plaintiff compensatory and punitive damages for its wrongful conduct; (2) Defendant Kelly to pay compensatory and punitive damages for his wrongful conduct; (3) the City to undertake appropriate injunctive relief to address the failures set out hereinabove; and (4) any other legal or equitable relief the Court deems appropriate.

## VII.   Count 4—False Arrest, False Imprisonment

53.     Plaintiff re-alleges and incorporates the averments set out in Paragraphs 1-31 of this First Amended Complaint as though fully set out herein.

54.     Defendant Kelly falsely arrested and/or falsely imprisoned Plaintiff and deprived her of her personal liberty when he arrested her for being a minor in possession of alcoholic beverages because he lacked probable cause and/or any other legal basis for arresting, detaining, and imprisoning Plaintiff.

55.     Defendant Kelly unlawfully arrested, detained, and imprisoned Plaintiff because of his personal grudge against Plaintiff for terminating their sexual relationship.

56.     Defendant Kelly acted intentionally and with malice towards Plaintiff.

57.     The City is vicariously liable for the tortious and/or wrongful conduct of Defendant Kelly.

58.     Plaintiff has suffered damages as hereinabove described as the proximate result of Defendants' wrongful conduct.

Wherefore premises considered, Plaintiff requests that the Court order:  (1) the City to pay Plaintiff compensatory and punitive damages for its wrongful conduct, (2) Defendant Kelly to pay compensatory and punitive damages for his wrongful conduct, (3) the City to undertake appropriate injunctive relief to address the failures set out hereinabove, and (4) any other legal or equitable relief the Court deems appropriate.

## VIII.  Count 5—Negligent and/or Wanton Hiring, Training and/or Supervision

59.     Plaintiff re-alleges and incorporates the averments set out in Paragraphs 1-31 of this First Amended Complaint as though fully set out herein.

60.     Defendant Kelly has a history of wrongful conduct while acting as a police officer for other jurisdictions prior to being hired or re-hired by the City and/or Chief Lester Patrick.

61.     The City negligently and/or wantonly failed to screen or investigate adequately Defendant Kelly's background and employment history before hiring him as a Tuskegee police officer.  As a result, the City acting by and through Chief Lester Patrick hired a person unfit to serve as a police officer.

62.     The City negligently and/or wantonly hired Defendant Kelly to serve as a Tuskegee police officer.

63.     The City negligently and/or wantonly failed to supervise and/or train Defendant Kelly.

64.     The City negligently and/or wantonly allowed Defendant Kelly to engage in repeated acts of illegal and inappropriate sex with Plaintiff and other minor children in Tuskegee while working in uniform, driving a Tuskegee police vehicle, and on duty as a Tuskegee police officer.

65.     The City negligently and/or wantonly allowed Defendant Kelly to use his Tuskegee police vehicle repeatedly as a place in which to engage in illegal and inappropriate

sexual conduct with Plaintiff while she was under the age of sixteen years and other minor children in Tuskegee while working in uniform and on duty as a Tuskegee police officer.

66.     The City negligently and/or wantonly supervised and trained Tuskegee police officers and police supervisors who facilitated and/or turned a blind eye to Defendant Kelly's illegal and inappropriate sexual conduct with Plaintiff and other minor children.

67.     The City negligently and/or wantonly trained and supervised other Tuskegee police officers and police supervisors who acted with deliberate indifference towards Plaintiff's safety, well being, and constitutional rights.

68.     The City is vicariously liable for the negligent, willful, and wanton conduct of Defendant Kelly and other Tuskegee police officers and police supervisors.

69.     As a proximate result of the negligence, wantonness, and/or willful conduct of Defendants, Plaintiff has suffered damages and/or harm as hereinabove described.

Wherefore premises considered, Plaintiff requests that the Court order:  (1) the City and/or Defendant Kelly to pay Plaintiff compensatory and punitive damages for their wrongful conduct; (2) Defendant Kelly to pay compensatory and punitive damages for his wrongful conduct; (3) the City to undertake appropriate injunctive relief to address the failures set out hereinabove; and (4) any other legal or equitable relief the Court deems appropriate.

Respectfully submitted this 19th day of June, 2019.

/s Algert S. Agricola, Jr
Algert S. Agricola, Jr.

/s Barbara H. Agricola
Barbara H. Agricola

**Of Counsel:**

**AGRICOLA LAW, LLC**
127 South 8th Street
Opelika, AL 36801
Phone:  334.759.7557
Fax:  334.759.7558
al@agricolalaw.com
barbara@agricolalaw.com

## **JURY DEMAND**

Plaintiff hereby demands trial before a struck jury.

/s Algert S. Agricola, Jr
Algert S. Agricola, Jr.

18

## CERTIFICATE OF SERVICE

I certify that I electronically filed the First Amended Complaint with the Clerk of Court using the Court's CM/ECF system, which will send electronic notification of filing to counsel of record for Defendants.

This the 19th day of June, 2019.

/s/ Algert S. Agricola, Jr.
AGRICOLA LAW, LLC
127 South 8th Street
Opelika, AL 36801
Phone:  334.759.7557
Fax:  334.759.7558
al@agricolalaw.com