IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ALEXANDRIA H. QUINN, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| vs. | )   Civil Action No. 3:14-cv-1033-ALB |
| | ) |
| CITY OF TUSKEGEE, ALABAMA; | ) |
| former OFFICER LEVY KELLY, | ) |
| | ) |
|    Defendants. | ) |

**PLAINTIFF'S OBJECTIONS TO MOTIONS *IN LIMINE*
AND RESPONSE TO OBJECTION TO PLAINTIFF'S
<u>SECOND AMENDED WITNESS LIST</u>**

Comes Now Plaintiff Alexandria H. Quinn, by and through her counsel of record, Algert S. Agricola, Jr. and Barbara H. Agricola of Agricola Law, LLC, and, files her Objection to the Motions *in Limine* and Response to the Objection to Plaintiff's Second Amended Witness List [Doc. 127 & 131] filed by Defendant the City of Tuskegee ("the City") as follows:

1. The City seeks to exclude from evidence any testimony from Khrystal Hutcherson, Ashley Hill, or Shalaina Hill as cumulative, not relevant, and not based on personal knowledge. Doc. 127, at 1-2. Plaintiff filed the affidavit of Khrystal Hutcherson [Doc. 94-3] in support of her motion for summary judgment as to Defendant Kelly. In her affidavit, Ms. Hutcherson, who was Plaintiff's best friend, described how Defendant Kelly frequently called her after Plaintiff and Defendant Kelly had broken off their relationship because Plaintiff had blocked Defendant Kelly's telephone number on her cell phone. Ms.

Hutcherson described how Defendant Kelly's expressed his frustration with Plaintiff over not being able to speak with her. Defendant Kelly called Ms. Hutcherson trying to speak with Plaintiff almost every other day during the approximately two years between Plaintiff's break-up with Kelly and the mace incident in October 2012. Ms. Hutcherson's testimony is relevant to establishing the connection between Plaintiff's break-up with Defendant Kelly and the mace incident in which Defendant Kelly used excessive force during his arrest of Plaintiff.

Further, Ms. Hutcherson was with Plaintiff immediately after she returned from the police station on the day Defendant Kelly maced her. Her affidavit describes Plaintiff's state of mind after the incident and the fear Plaintiff expressed of Defendant Kelly then and continues to feel today. Ms. Hutcherson was also with Plaintiff in the car on several occasions when they were met by Defendant Kelly in his patrol car and when he recognized Plaintiff, he would turn around and follow them. On one of these occasions, Defendant Kelly turned around, pursued them with his blue lights on, and stopped the car Plaintiff was driving. When Defendant Kelly came to the driver side of the car and saw that there were four people in the car with Plaintiff, he turned around, got back into his police car, and drove off.

Finally, after Defendant Kelly's arrest in December 2014, on charges that he had illegal sexual relations with under aged females in Tuskegee, Ms. Hutcherson provided investigators with the State Bureau of Investigation information based on her knowledge of

2

the relationship between Defendant Kelly and Plaintiff. Ms. Hutcherson's testimony is relevant, not cumulative, and based on her first hand knowledge of events.

There is no basis for the City's effort to exclude the testimony of Ashley Hill and Shalaina Hill. The City did not bother to take their depositions. The City's motion speculates as to the subject of their testimony because the City does not know what testimony these witnesses will give. This Court condemned a motion *in limine* filed on this basis in its pretrial conference call with the parties as an unauthorized effort to discover the purpose of the testimony to which the motion is directed. Plaintiff's response is to assure the Court that if she calls Ashley Hill or Shalaina Hill to testify, their testimony will be based on their personal knowledge, will be relevant, and will not be cumulative.

2. The City seeks to exclude the testimony of D.M., who is the alleged minor, female victim in the Butler County criminal indictment returned against Defendant Levy Kelly in 2014. Again, the City did not bother to take the deposition of D.M., so it speculates as to the subject of her testimony and seeks to discover the same by way of its motion *in limine*.

Plaintiff asserts that the testimony of D.M. is admissible in evidence against Defendant Kelly under Fed.R.Evid. 404(b)(2), not to prove Defendant Kelly's character in order to show that he acted in accordance with that character, but rather to prove motive (an unnatural desire for sex with minor females), opportunity (use of his status as a police officer), intent (sexual gratification), preparation (he prepared to take D.M. out of town), plan

3

(he planned to give her a tattoo as a birthday present to be done in Greenville), knowledge (he knew his victims were underage), identity (his "signature" was sex with underage females), absence of mistake, or lack of accident. This evidence is admissible against the City because Michael Clements testified that it was common knowledge among the officers of the Tuskegee police force that Defendant Kelly was having sex with young girls. [Doc. 98-2, ¶ 5].

As for the City's claim that Plaintiff's relationship ended before the incident with D.M. occurred, D.M. states in her recorded interview contained in the ALEA investigative file produced to the parties pursuant to subpoena that during the drive from Tuskegee to Greenville to get the tattoo in the fall of 2010, Defendant Kelly received several calls from Plaintiff. The incident in which D.M. is alleged to have been raped by Defendant Kelly occurred in the fall of 2010. Plaintiff's first amended complaint states that in 2020 while she was seventeen years old (thus before her eighteenth birthday on December 24, 2010), she broke off her relationship with Defendant Kelly. [Doc. 75, ¶ 16]. The evidence will show that the incident between Defendant Kelly and D.M. occurred while Defendant Kelly and Plaintiff were still involved in their relationship.

The testimony of D.M. is relevant, is based on her personal knowledge, and will not be cumulative. Further, the probative value of D.M.'s testimony, as outlined above, outweighs any prejudicial effect that may occur as a result of its admission under Rule 403.

3. The City seeks to exclude evidence described as a "2007 ABI file" which the City erroneously identified as an exhibit on its exhibit list for trial. The only reason Plaintiff listed the document was that the City listed it. Plaintiff does not intend to use the document at trial.

4. The City seeks to exclude the affidavits of Plaintiff and Michael Clements. Again, these documents were listed by the City on its exhibit list for trial. Presumably, the City listed these documents in the event it was necessary to use them to impeach these witnesses with their prior inconsistent statements under Fed.R.Evid. 613(b). Plaintiff would only use these exhibits for the same purpose.

5. The City seeks to exclude medical records of Plaintiff apparently on the ground that Plaintiff cannot establish a proper foundation for their introduction. Plaintiff sought counseling on approximately eighteen occasions at the Child Advocacy Center in Opelika between August 2013 and February 2014. Plaintiff has subpoenaed the custodian of records for the Child Advocacy Center to authenticate the records that will be introduced under Fed.R.Evid. 901, since the City declined to stipulate to the authenticity of the records from the Child Advocacy Center. All of the records have been provided to the parties during the course of discovery. Testimony will be given at trial by at least one of Plaintiff's counselors and the progress notes from Plaintiff's counseling sessions will be identified and offered in evidence. There is no need for testimony regarding the reasonableness of the charges for

these counseling sessions since they are provided at no cost. The records will be offered under Fed.R.Evid. 803(4).

6. The City seeks to exclude pleadings from evidence. Again, these documents were listed by the City on its exhibit list for trial. Presumably, the City listed these documents in the event it was necessary to use them to impeach witnesses with their prior inconsistent statements under Fed.R.Evid. 613(b). Plaintiff would only use these exhibits for the same purpose.

7. The City seeks to exclude written discovery responses from the parties. Again, these documents were listed by the City on its exhibit list for trial. Presumably, the City listed these documents in the event it was necessary to use them to impeach these witnesses with their prior inconsistent statements under Fed.R.Evid. 613(b). Plaintiff would only use these exhibits for the same purpose.

8. In its Supplemental Motion *In Limine* and Objection to Plaintiff's Second Amended Witness List [Doc. 131], the City objects to Plaintiff's identification of Special Agent Anthony Green as a witness. In Plaintiff's Witness List filed on April 2, 2020 [Doc. 112], Plaintiff identified "Any witnesses who may testify for the State of Alabama in the two criminal cases currently pending against Defendant Levy Kelly" as possible witnesses. The 2012 ALEA case file listed as an exhibit by the City shows Special Agent Green's participation throughout the ALEA investigation of Defendant Kelly. Counsel for the City even asked Plaintiff about her discussions with Special Agent Green during her deposition

on May 30, 2019. [Doc. 92-1, at 52]. Thus, the City claim of lack of notice as to the possibility of Agent Green testifying is not based on the facts.

Further, Agent Green will testify as to how the investigation of Defendant Kelly started as an investigation of an off-duty shooting incident involving Defendant Kelly which occurred in late October, 2012, just two weeks after the mace incident in which Defendant Kelly sprayed mace in Plaintiff's face. But in the course of ALEA's investigation into the shooting involving Defendant Kelly, he told investigators that he took cell phone photographs of the scene of the shooting immediately after it occurred. Subsequent examination by ALEA of photographs stored in Defendant Kelly's cell phone showed hundreds of photographs of underage females. It was the discovery of these photographs of underage females stored in Defendant Kelly's cell phone that lead investigators to Plaintiff. When Agent Green and other ALEA investigators interviewed Plaintiff, she told them all about her relationship with Defendant Kelly beginning in 2007, when she was fourteen years old, and continuing to 2010.

Agent Green's testimony will be offered to show how the investigation into Defendant Kelly developed, through good police work, from a standard "officer-involved shooting" investigation into an investigation, arrest, and prosecution of a serial child molester. These statements from Plaintiff to Agent Green are not offered to prove the truth of the matters asserted in them but rather to show how the case against Defendant Kelly unfolded. It is important for the jury to understand the sequence of events leading to the discovery of

Defendant Kelly's relationship with Plaintiff, especially that it was Defendant Kelly's use of his cell phone to take pictures of the scene of the shooting that ultimately lead them to Plaintiff.

Defendant Kelly's statements to ALEA investigators during the course of the investigation are not hearsay under Fed.R.Evid. 801(d)(2)(A), when offered against Defendant Kelly because he made the statements and he is an opposing party. Defendant Kelly's statements to ALEA investigators during the course of the investigation are not hearsay under Fed.R.Evid. 801(d)(2)(D), when offered against the City because, at the time Defendant Kelly made the statements, he was an employee of the City speaking on a matter within the scope of that relationship and while it existed.

Thus, Agent Green's testimony is relevant, based on first hand knowledge, and not offered to prove the truth of the matters asserted but rather how ALEA's investigation developed from an officer-involved shooting investigation into an investigation, arrest, and prosecution of a serial child molester. Defendant Kelly's statements are not hearsay under Fed.R.Evid. 801(d).

Wherefore premises considered, with the exception of the evidence relating to the "2007 ABI file" discussed in paragraph 3 hereinabove, the City's motions *in limine* are due to be DENIED, and the City's Objection to Plaintiff's Second Amended Witness List is due to be OVERRULED.

Respectfully submitted this 11th day of May, 2020.

/s Algert S. Agricola, Jr
Algert S. Agricola, Jr.

/s Barbara H. Agricola
Barbara H. Agricola

**Of Counsel:**

**AGRICOLA LAW, LLC**
127 South 8th Street
Opelika, AL 36801
Phone: 334.759.7557
Fax: 334.759.7558
al@agricolalaw.com
barbara@agricolalaw.com

**CERTIFICATE OF SERVICE**

I certify that I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will send electronic notification of filing to counsel of record for Defendants. In addition, I served a copy of the foregoing by U.S. Mail, properly addressed with postage prepaid to the following unrepresented party:

Levy Kelly
160 Stone Park Blvd., Apt. 2409
Pike Road, AL 36063

This the 11th day of May, 2020.

/s/ Algert S. Agricola, Jr.
AGRICOLA LAW, LLC
127 South 8th Street
Opelika, AL 36801
Phone: 334.759.7557
Fax: 334.759.7558
al@agricolalaw.com