IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ALEXANDRIA H. QUINN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:14-cv-1033-ALB |
| | ) |
| CITY OF TUSKEGEE, ALABAMA; | ) |
| former OFFICER LEVY KELLY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Alexandria H. Quinn ("Plaintiff") filed this civil rights action against the City of Tuskegee, Alabama ("the City"), and Levy Kelly ("Kelly"), a former police officer for the City of Tuskegee Police Department ("Tuskegee PD"). She asserts claims under 42 U.S.C. § 1983, as well as Alabama state law claims for assault and battery and false arrest by Kelly. This matter comes before the Court on Plaintiff's Motion for Summary Judgment (Doc. 94) ("the motion") against Kelly. Upon consideration, the motion is due to be GRANTED.

### BACKGROUND

Levy Kelly was first hired as a police officer by the City of Tuskegee in 2005, after serving as a police officer for the City of Hayneville. In 2010, Kelly left the Tuskegee PD and rejoined the Hayneville PD as the Assistant Police Chief. But less

than a year later in 2011, Kelly again left the Hayneville PD and was again hired as a police officer by the Tuskegee PD. He served in that capacity until he was terminated in November 2013.

Plaintiff Alexandria Quinn met Kelly in November 2007, during his first stint with the Tuskegee PD, when she was 13 years old. Kelly began having a sexual relationship with Quinn shortly after she turned 14 years old. In fact, Kelly had sexual intercourse with Quinn at least fifteen times in between the time she was 14 and 17 years old. On these occasions, Kelly was on duty as a police officer, used his police-issued Nextel phone to communicate with Plaintiff and to facilitate their sexual encounters, wore his police uniform with his gun, drove his patrol vehicle to meet Plaintiff, and often had sex with Plaintiff in his patrol vehicle. (Doc. 92-1 at 81:17 – 83:23, 85:6 – 88:3). Quinn ended the relationship with Kelly in 2010.

On or about October 13, 2012, Quinn was approached by Kelly in his patrol vehicle when she was standing outside her parked vehicle. Kelly approached Quinn from behind, sprayed her in the face with OC spray, handcuffed her, and placed her in his patrol vehicle. (Pl. Exhibit 1, at 1). Kelly then opened a closed container of beer he retrieved from Quinn's car, poured it out nearby, called for backup, and arrested Quinn for being a minor in possession of alcohol. *Id.* at 2. Two Tuskegee police officers responded to the scene. Quinn told them that she and Kelly had been in a sexual relationship when she was 14 and that Kelly detained her because he had

a "grudge" against her for terminating their sexual relationship. (Doc. 75 at 15, Pl. Exhibit 1, at 2). The other officers allowed Kelly to leave the scene alone with Quinn in the back of his police vehicle. (Pl. Exhibit 1, at 3.)

Kelly drove Quinn around in his patrol vehicle for approximately 15 minutes before taking her to the police station, during which time he told Plaintiff that "he could have killed [her]." Plaintiff feared that Kelly was going to rape or otherwise physically harm her. *Id*. At the station, another officer called an ambulance because of Quinn's continued difficulty breathing. *Id*. at 4. At the police station, Quinn was forced to stay in an interrogation room alone with Kelly for two hours before she was released. *Id*. At no point during the October 2012 incident did Plaintiff take any action which would have put Kelly in fear of bodily harm. She was unarmed, made no threatening comments to Kelly, and did not resist his unauthorized arrest. *Id*. The charge of being a minor in possession of alcoholic beverages was later dismissed. *Id*.

Later in October 2012, two weeks after Quinn's arrest, Kelly was involved in an off-duty shooting. Kelly was placed on administrative leave and an investigation was initiated by the Alabama Bureau of Investigation ("ABI"), which is now the Alabama Law Enforcement Agency. During the investigation, ABI agents discovered photographs of multiple minors on Kelly's cellphone and questioned Quinn about her relationship with Kelly. In November 2013, ABI informed the City

that it was moving forward with the charges against Kelly, and at that time, Kelly was terminated.

Plaintiff filed this action against the City and Kelly on October 6, 2014. Shortly thereafter, this action was stayed pending the criminal proceedings against Kelly. The stay was lifted on December 10, 2018, and on June 19, 2019, Plaintiff filed her First Amended Complaint. Kelly has exercised his Fifth Amendment right to refuse to provide any sworn testimony that could incriminate him in any of the ongoing criminal actions pending against him.  Other than that, he has done nothing to defend himself in this matter or submitted any evidence to contest Plaintiff's claims. Defendant Kelly has not answered the complaint (Doc. 1) or the First Amended Complaint (Doc. 75). Discovery has been conducted without any participation by Kelly.

## STANDARD

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). If the moving party meets its burden, the nonmoving party must then "go beyond the pleadings and

by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). The Court views the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

## DISCUSSION

There are four counts against Kelly in the operative complaint. Count One alleges a deprivation of federal rights under color of state law in violation of 42 U.S.C. § 1983, stemming from Kelly's use of excessive force in making an arrest while on-duty as a Tuskegee police officer. Count Two alleges assault and battery when Kelly engaged in illegal and inappropriate sexual activity with the Plaintiff before she turned sixteen years old. Count Three alleges assault and battery when Kelly sprayed Plaintiff with OC spray during the October 2012 arrest. Count Four alleges false arrest and/or false imprisonment when Kelly took plaintiff into custody during the same incident.

Defendant Kelly erroneously argues that the invocation of his Fifth Amendment right against self-incrimination should forestall summary judgment in this civil action because it would be unfair to require him to offer testimony rebutting Plaintiff's evidence when there is a pending criminal action against him. (Doc. 105 at 4). To the contrary, the Eleventh Circuit has held that, although the Fifth Amendment shields one from having to testify in his own defense, "[t]hose who choose to remain silent 'must bear the consequence of a lack of evidence.'" *Arango v. U.S. Dep't of the Treasury*, 115 F.3d 922, 927 (11th Cir. 1997). Kelly cannot rely on the Fifth Amendment to defeat Plaintiff's motion for summary judgment.

For her part, Plaintiff argues that the Court should draw an adverse inference against Kelly because he invoked the Fifth Amendment. But the Court declines to do so. Although a court may draw an adverse inference against a Fifth Amendment claimant, *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1304 (11th Cir. 2009), a court cannot draw an adverse inference against a Fifth Amendment claimant when the claimant in a civil case is also a defendant in a related criminal case and is forced to choose between waiving the privilege and losing the civil case on summary judgment. *United States v. Two Parcels of Real Prop. Located in Russell Cty., Ala.*, 92 F.3d 1123, 1129 (11th Cir. 1996); *United States v. Premises Located at Route 13*, 946 F.2d 749 (11th Cir.1991).

In any event, Plaintiff has provided ample evidence to support summary judgment *without* requiring an adverse inference. *See, e.g.*, *U.S. Commodity Futures Trading Comm'n v. Stroud*, No. 3:12-CV-00203, 2016 WL 9774506, at *3 (M.D. Ala. Mar. 1, 2016) (summary judgment was granted where Fifth Amendment claimant was also a criminal defendant, but plaintiff had met its evidentiary burden and claimant/defendant did not contest any material facts). In support of her Motion for Summary Judgment, Plaintiff Quinn has submitted three sworn affidavits supporting her claims against Kelly. (Pl. Exhibits 1, 2, and 3). The supporting affidavits include her own sworn account of her encounters with Kelly, the sworn account of a friend and witness, and the sworn account of one of Kelly's colleagues at the Tuskegee PD. All support the allegations against Kelly contained in her complaint. Quinn also affirmed the allegations in her complaint in her deposition. (Doc. 92-1). This evidentiary showing establishes a prima facie case on each of Plaintiff's four claims against Kelly.

In Count One, Plaintiff makes a § 1983 excessive force claim against Kelly. An excessive force claim arising out of an arrest is governed by the Fourth Amendment's "objective reasonableness" standard. *Brosseau v. Haugen,* 543 U.S. 194, 197 (2004); *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 738 (11th Cir. 2010). The Eleventh Circuit has identified several factors weighed in determining whether an officer's use of force was objectively reasonable: (1) the need for the

7

application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008); *Slicker v. Jackson,* 215 F.3d 1225, 1233 (11th Cir.2000).

Based on the undisputed facts in Plaintiff's evidentiary showing, all four factors weigh in Plaintiff's favor. First, there was no need for the application of force. Plaintiff was standing beside her parked car searching for her cell phone when she was approached, she did not behave in a threatening or aggressive manner toward Kelly (Pl. Exhibit 1, at 1-2), and made no effort to resist the arrest. *Id*. at 4. Second, the amount of force Kelly applied was unnecessary.  The use of OC spray was a disproportionate response to a supposed case of a minor in possession of alcohol. Use of the spray was not necessary to arrest the 105-pound Quinn when she was not actively resisting. *Id*. at 3. Third, Quinn was seriously harmed. In addition to the burning sensation cause by the spray, an ambulance was eventually called because Quinn experienced difficult breathing. She continues to suffer post-traumatic stress disorder and depression stemming from the encounter, for which she has sought treatment. *Id*. at 4-5. Finally, Kelly applied force maliciously and sadistically. After he handcuffed her and put her in his patrol car, Kelly drove Plaintiff "around for fifteen minutes before he took [her] to the Tuskegee police station," telling her along

8

the way that "he could have killed [her]." *Id.* at 3. Accordingly, Plaintiff has established a prima facie case of excessive force.

Counts Two and Three both state claims for Assault and Battery. The Alabama Supreme Court defines assault as an "intentional, unlawful offer to touch the person of another in a rude or angry manner" that "create[s] in the mind of the party alleging the assault a well-founded fear of an imminent battery," coupled with the "apparent present ability" to effectuate the assault if not prevented. *Wright v. Wright,* 654 So.2d 542, 544 (Ala.1995) (citing *Allen v. Walker*, 569 So. 2d 350, 351 (Ala. 1990). A successful assault becomes a battery, and "consists of the touching of another in a hostile manner." *Id.* (citing *Surrency v. Harbison,* 489 So.2d 1097 (Ala.1986)).

Count Two alleges Plaintiff suffered an assault and battery when Kelly engaged in illegal and inappropriate sexual activity with the Plaintiff before she turned sixteen. It is undisputed that Kelly began a sexual relationship with Plaintiff when she was 14 years old. (Doc. 92-1 at 81:9-11). Kelly had sexual intercourse with Plaintiff at least fifteen times between the time she was 14 and 17 years old. *Id.* at 104:5-9. Plaintiff characterizes these encounters as "rape." *Id.* at 28:22, 29:22. This non-consensual sexual contact constitutes touching of another in a hostile manner.

Count Three alleges assault and battery when Kelly unnecessarily sprayed Plaintiff with OC spray during the October 2012 arrest. It is undisputed that Kelly

sprayed OC spray on Plaintiff's face in the course of making the arrest. (Pl. Exhibit 1, at 2). Kelly did not wipe Plaintiff's face, even after he handcuffed her. *Id.* Eventually, another officer arrived on the scene and wiped the spray from Plaintiff's face. *Id.* After arriving at the Tuskegee police station, an ambulance was called due to Plaintiff's inability to breath as a side effect the spray. *Id.* at 4. The unnecessary use of OC spray constitutes touching of another in a hostile manner.

Finally, Count Four alleges false imprisonment. Under Alabama law, false imprisonment consists of the "unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala. Code § 6–5–170 (1975). This includes directly restraining a person as well as threatening force to keep him in place or make him go where he does not wish to go. *Crown Central Petrol. Corp. v. Williams,* 679 So.2d 651, 653 (Ala. 1996). In transporting Plaintiff to the police station, Kelly kept Plaintiff trapped in his patrol car while he "drove [her] around" for fifteen extra minutes, in which time he said he "could have killed" her. *Id.* Moreover, Kelly lacked proper cause to search Plaintiff's vehicle, arrest her, and detain her at the station for two hours. Instead, he was motivated by a grudge he held against Plaintiff for terminating their sexual relationship. (Doc. 75 at 15, Pl. Exhibit 1, at 3). His actions constitute unlawful detention in which Plaintiff was deprived of her personal liberty.

Because the record contains sufficient evidence for a jury to render a verdict in favor of Plaintiff Quinn, to survive summary judgment, Kelly must go beyond the pleadings and designate specific facts showing that there is a genuine factual dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. at 323. He has not done so. In fact, he failed to file an answer in this case at all. He has not sat for a deposition or submitted a declaration. And he has adduced no evidence from other witnesses, records, documents, etc. Nor did he respond to Plaintiff's motion by pointing out inconsistencies or damaging testimony in her own evidentiary production. Instead, he responded to the summary judgment motion by (1) "den[ying] all claims alleged against him by the Plaintiff in the initial and amended complaint" in an unverified brief, (2) failing to provide any opposing facts that would create an issue for trial, and (3) invoking his Fifth Amendment right not to testify. (Doc. 105 at 5). Accordingly, summary judgment is due to be granted.

## CONCLUSION

Based on the foregoing reasons, Plaintiff's Motion for Summary Judgment is GRANTED.

The Court concludes that Kelly is liable to Plaintiff on the four counts in the Amended Complaint. Plaintiff produced no evidence of damages. Accordingly, the Court will consider damages later.

This case is not closed. Kelly remains a party for the purpose of assessing damages.

**DONE** and **ORDERED** this 12th day of May 2020.

            /s/ Andrew L. Brasher
            ANDREW L. BRASHER
            UNITED STATES DISTRICT JUDGE