IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ALEXANDRIA H. QUINN, | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | *   3:14-CV-1033-ALB-SMD |
| | * |
| CITY OF TUSKEGEE, ALABAMA, | * |
| and LEVY KELLY; | * |
| | * |
| Defendants. | * |

---

## DEFENDANT CITY OF TUSKEGEE'S TRIAL BRIEF

---

Trial Date: <u>June 1, 2020</u>

United States District Court for the Middle District of Alabama, Eastern Division
G.W. Andrews Federal Building and U.S. Courthouse
Opelika, Alabama

/s/ Rick A. Howard
RICK A. HOWARD (ASB-9513-W79R)
APRIL W. MCKAY (ASB-5653-P76W)

/s/ Milton C. Davis
Milton C. Davis DAV035

**OF COUNSEL:**
HOLTSFORD GILLILAND
HIGGINS HITSON & HOWARD, P. C.
Post Office Box 4128
Montgomery, Alabama 36103-4128
rhoward@hglawpc.com

**OF COUNSEL**:
Milton Davis
304 North Main Street
Post Office Box 830509
Tuskegee, Alabama 36083
Davismiltonc@bellsouth.net

Attorneys for Defendant City of Tuskegee

## CONTROLLING AND MOST APPROPRIATE AUTHORITY:

**Cases**:

*Almand v. DeKalb County, Georgia,* 103 F.3d 1510 (11th Cir.), *cert. denied,* 522 U.S. 966, 118 S.Ct. 411, 139 L.Ed.2d 314 (1997)

*Board of County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)

*Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312 (11th Cir.2016)

*Doe v. City of Demopolis*, 799 F. Supp. 2d 1300 (S.D. Ala. 2011), *aff'd sub nom. Doe ex rel. Doe v. City of Demopolis*, 461 F. App'x 915 (11th Cir. 2012)

*Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)

*Owens v. City of Fort Lauderdale,* 174 F. Supp.2d 1298 (S.D. Fla. 2001)

**Statutes**:

42 U.S.C. § 1983

## INTRODUCTION

This civil action, brought pursuant to 42 U.S.C. §1983, arises from an alleged sexual relationship between Defendant Levy Kelly, who was at the time employed as a police officer for the City of Tuskegee, Alabama, and Plaintiff Alexandria Quinn, who at the time was a minor, and a separate incident of alleged excessive force in the course of Plaintiff's arrest by Kelly in October 2012. (Doc 75). The facts and events relevant to this suit occurred between the years of 2007 and 2012. (Doc 1; Doc 75). In 2014, after having reached the age of majority, Plaintiff Quinn filed this suit against Kelly and the City of Tuskegee. (Doc 1). Plaintiff asserted that Kelly violated her rights under the Fourth and Fourteenth Amendments, and also brought claims against Kelly under state law. (Doc 75). Plaintiff also asserted §1983 claims against the City, and state law claims for respondeat superior and negligent hiring, training, or supervision. This Court dismissed each of Plaintiff's state law claims against the City. (Doc 109). This Court also granted the Plaintiff's

motion for summary judgment against Defendant Kelly. (Doc 135). The only claims remaining for trial against the City are Plaintiff's claims under §1983. (Doc 109). The City, in accordance with this Court's Order on Pretrial Hearing (Doc 119), submits the following as its Trial Brief.

## LEGAL OVERVIEW AND ISSUES FOR TRIAL

Plaintiff has asserted that the City of Tuskegee is liable pursuant to 42 U.S.C. § 1983 based on two separate theories: (1) the unlawful sexual relationship between Plaintiff as a minor and Kelly, and (2) the arrest and use of force by Kelly in October 2012. (Doc 75). Based on the evidence that will be presented at trial, the City should not be held liable under either theory.

I. <u>If Kelly was not acting under color of law, the City cannot be held liable under § 1983</u>.

As to the first alleged ground, if Levy Kelly was not acting under color of state law at the time of his misdeeds, the City cannot be held liable for his actions. *Almand v. DeKalb County, Georgia,* 103 F.3d 1510, 1513 (11th Cir.), *cert. denied,* 522 U.S. 966, 118 S.Ct. 411, 139 L.Ed.2d 314 (1997). The evidence at trial will establish that Kelly acted as a private citizen, <u>not</u> under color of law. "A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state," *Griffin v. City of Opa–Locka*, 261 F.3d 1295, 1303 (11th Cir.2001), or when "the manner of his conduct ... makes clear that he was asserting the authority granted him and not acting in the role of a private person." *Williams v. United States*, 341 U.S. 97, 100, 71 S.Ct. 576, 578, 95 L.Ed. 774 (1951). "The dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual." *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1523 (11th Cir.1995).

The facts presented at trial will show that, even though Kelly was employed as a law enforcement officer, he acted in a private capacity not dependent upon or enabled by that

3

employment. Moreover, Kelly specifically informed Plaintiff that if he "got caught" he would "go to jail". Therefore, the City cannot be held liable for a constitutional violation.

    II.    <u>Plaintiff must show that the City was deliberately indifferent to her constitutional rights</u>.

It is undisputed that municipalities may not be held liable for constitutional deprivations on the theory of *respondeat superior,* see *Monell v. Department of Social Servs*., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "Deliberate indifference is not the same thing as negligence or carelessness. See *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). On the contrary, the Supreme Court has made clear that a state official acts with deliberate indifference only when he disregards a risk of harm of which he is <u>actually aware</u>. *Farmer v. Brennan,* 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (to be deliberately indifferent a state 'official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and *he must also draw the inference* ') (emphasis added). "Following this guidance, [the Eleventh Circuit has] stated that in order to establish deliberate indifference, plaintiffs must be able to [establish] that the defendant (1) was objectively aware of a risk of serious harm; (2) recklessly disregarded the risk of harm; and (3) this conduct was more than merely negligent. *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir.1999)."

In cases where a plaintiff presents a § 1983 claim based on a hiring decision and inadequate screening, the Supreme Court has stated that:

> Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."

*Board of County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 411, 117 S.Ct. 1382, 1392, 137 L.Ed.2d 626 (1997).

To impose § 1983 liability based on a hiring decision, a plaintiff must demonstrate that the municipal actor disregarded a known or obvious consequence of hiring the applicant. It is not sufficient under this standard that a municipal actor's inadequate screening of an applicant's record reflects an "indifference" to the applicant's background. *Id.* at 411, 117 S.Ct. at 1392. Rather, a plaintiff must demonstrate that the municipal hiring decision reflects deliberate indifference to <u>the risk that a violation of a particular constitutional or statutory right will follow</u> the decision. *Id.* A showing of simple or even heightened negligence will not suffice. *Id*. at 407.

Deliberate indifference will "ordinarily" only be found in the face of "[a] pattern of similar constitutional violations." *Connick v. Thompson*, 563 U.S. 51, 62, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011). Incidents that "are not similar to the violation at issue here… could not have put [the defendant] on notice that specific training was necessary to avoid this constitutional violation." *Connick*, 563 U.S. at 63. The City should be entitled to judgment as a matter of law on the failure-to-train or supervise claim because Plaintiff cannot prove a pattern of **similar** violations that would "establish that the 'policy of inaction' [was] the functional equivalent of a decision by the city itself to violate the Constitution." *Connick*, 563 U.S. at 72. Furthermore, "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice to the cit[y] and the opportunity to conform to constitutional dictates." *Connick v. Thompson*, 563 U.S. 51, 63, n. 7, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011).

### A. Deliberate Indifference to Sexual Misconduct

The evidence will show that any alleged conversation with City of Tuskegee police officers, which Plaintiff contends placed the City on notice of rape, occurred <u>after</u> the last sexual

5

interaction between Plaintiff and Levy Kelly. Any conversation between Plaintiff and City employees which took place after the last rape occurred would not have prevented the previous rapes nor could it have placed the City of Tuskegee "on notice" to take action in order to prevent a future sexual assault or rape. In summary, any conversation by Plaintiff with City police officers after the fact would not have changed the past and could not show that the City was "deliberately indifferent" to any alleged constitutional violation.

To hold the City liable for the actions of Levy Kelly, the Plaintiff must establish that the City, through its final policymakers, "knew of, ignored, and tolerated the [constitutional violation]". *Griffin*, at 1308. A municipality has "a right to rely on the common sense of its police officers to refrain from perpetrating sex crimes on young girls" unless the municipality has "notice to the contrary." *Doe v. City of Demopolis*, 799 F. Supp. 2d 1300, 1315 (S.D. Ala. 2011), *aff'd sub nom. Doe ex rel. Doe v. City of Demopolis*, 461 F. App'x 915 (11th Cir. 2012); *see also Williams v. Enders,* 2010 WL 989978, *4 (M.D.Ga. Mar. 16, 2010) (opining that if municipality was aware of history of officers bartering arrests for sexual favors, then "the City may display deliberate indifference if it relied on the common sense of the members of the Police Department, rather than taking corrective measures"). Plaintiff apparently seeks to establish deliberate indifference using this approach of "notice", as she asserts that the Chief of Police had actual knowledge that Officer Kelly was having sex with minor girls. However, in order to be the "moving force" behind her constitutional violation, Plaintiff's evidence of notice and actual knowledge would have to be such that would have prevented her constitutional violation, and would therefore necessarily have to be notice or knowledge of Kelly's actions prior to her victimization by Kelly.

It is anticipated, however, that Plaintiff will introduce evidence at trial of conversations allegedly providing "notice" of Kelly's propensities, which occurred <u>after</u> his relationship with her had ended. This evidence cannot, as a matter of common sense or a matter of law, establish indifference that was a moving force behind her rape.

Plaintiff alleges that she placed the City of Tuskegee on notice of potential rape through her interactions with police officers or dispatchers on several occasions. These interactions with the City officers consist of the following five separate incidents: (1) Plaintiff told officers about the relationship at the time of the arrest/macing incident; (2) police officers met her at McDonald's; (3) Plaintiff went to Kelly's residence; (4) an incident when Kelly had an injured leg and had his motorcycle stolen; and (5) conversations with dispatchers in which she asked to leave a message for Kelly. All of these specific incidents occurred <u>after</u> the last alleged rape, as the evidence adduced at trial will show. Plaintiff will also attempt to utilize the testimony of a convicted felon, Michael Clements. Clements will testify that he did not tell anyone that Kelly and Plaintiff were involved in a sexual relationship. Further, Clements will testify that he did not possess probable cause to even arrest Kelly based on rumors he heard. If Clements did not have a reasonable probability that criminal activity had occurred or was ongoing, it is not reasonable that the "information" he relayed to Chief Patrick remarkably then transformed into "actual notice" of criminal activity by the City.

As will be seen, each of the Plaintiff's alleged conversations with police officers regarding her relationship with Kelly, where Plaintiff contends she placed the City on notice to stop a potential rape, occurred after the last rape. These incidents, as a matter of law, cannot be utilized as competent evidence to show deliberate indifference to a constitutional violation that was the

7

"moving force" behind the violation, as the violations had already occurred and ended prior to the alleged indifference.

### B. Deliberate Indifference to Excessive Force

Plaintiff will also attempt to argue to the jury that the City is liable for Kelly's alleged use of excessive force during her arrest in October 2012. Until her arrest in 2012, Plaintiff did not file any complaint against Kelly. Plaintiff will testify that Kelly never hit her before the use of excessive force and Kelly's actions came "without warning". If Kelly's acts occurred without prior history and "without warning" to Plaintiff, it is impossible for the Plaintiff to show that the City had "actual notice" that Kelly would use excessive force.

Once Plaintiff did file a complaint, the City took it seriously and was in the process of investigating the use of force complaint when Kelly was involved in an off-duty shooting which led to the discovery of his relationship with Plaintiff and other underaged minors. There is no indication that any previous complaints had ever been made against Kelly regarding an alleged use of unlawful force.

No evidence of an "unconstitutional" municipal policy regarding use of force will be introduced at trial, or claimed. In limited circumstances, a municipality can be held liable for a failure to train its police officers in lieu of establishing a *per se* unconstitutional municipal policy. *City of Canton v. Harris*, 489 U.S. 378 (1989). However, plaintiffs seeking to prevail under this theory must first prove a direct causal link between the municipal training policy and the inadequacy likely to result in the violation of constitutional rights, so "that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need." *Riley v. Newton*, 94 F.3d 632, 638 (11th Cir. 1996)(citing *City of Canton v. Harris*, 489 U.S. at 390).

In other words, a municipality will only be held liable for an employee's constitutional violations where "the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." *Gold v. City of Miami,* 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)). A municipality can be held liable on a failure-to-train or failure-to-supervise theory only if those in supervisory positions fail to supervise subordinates in such a manner as to demonstrate "deliberate indifference" to the constitutional rights of citizens. *City of Canton,* 489 U.S. at 388 (1989).

A plaintiff can show that a municipality was deliberately indifferent to the need for increased supervision by demonstrating (1) a "pattern of constitutional violations. . . such that the municipality knows or should know that corrective measures are needed," *Young v. City of Augusta,* 59 F.3d 1160, 1172 (11th Cir. 1995), or (2) that the "violation of federal rights. . . [was a] highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Bd. of Cty. Comm'rs v. Brown,* 520 U.S. 397, 409 (1997). It is "only a heightened degree of culpability that will satisfy the subjective knowledge component of the deliberate indifference standard, a requirement that 'is far more onerous than normal tort-based standards of conduct sounding in negligence.'" *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1321 (11th Cir.2016). Plaintiff will not introduce evidence at trial that will satisfy her burden of proof under either available theory.

To put a municipality on notice that more or different supervision or training is required, past incidents must show a pattern of "widespread prior abuse." *Wright v. Sheppard,* 919 F.2d 665, 674 (11th Cir. 1990). While there is no bright line regarding the number of similar violations that must occur before a municipality will be deemed to be on notice, "it is the rare instance that

only one previous incident will be sufficient to place a municipality on notice of 'widespread abuse' constituting deliberate indifference." *Owens v. City of Fort Lauderdale,* 174 F. Supp.2d 1298, 1312 (S.D. Fla. 2001).

Here, Plaintiff will allege that the City had notice that Kelly would use his power as a police officer to hurt her, but did nothing to stop it. However, the evidence that will be presented at trial will not support this argument. The evidence will show that there was no notice provided to the City **prior to the macing incident** that Kelly would use excessive force against the Plaintiff in the course of an arrest. The "single incident" exception, such as that found in *Brown v. Bryan Cnty.*, 219 F.3d 450 (5th Cir. 2000), is a narrow one, and one that will not be supported by the facts presented at the trial of this case. See *Burge v. St. Tammany Par.,* 336 F.3d 363, 373 (5th Cir. 2003). On those facts, the City cannot be held liable under §1983.

## CONCLUSION

The testimony and evidence that will be presented at the trial of this case will not sustain a verdict against the City of Tuskegee under any available §1983 theory of liability. Defendant will file a motion at the conclusion of Plaintiff's case, and at the close of all evidence, that will show that Plaintiff's claims should be dismissed without the issue being submitted to the jury. Plaintiff is unable to meet her high burden of proof requiring a showing of deliberate indifference to a constitutional violation.

Respectfully submitted on this the 26th day of May, 2020.

/s/ Rick S. Howard
RICK A. HOWARD (ASB-9513-W79R)
APRIL W. MCKAY (ASB-5653-P76W)
Attorneys for Defendant City of Tuskegee

OF COUNSEL:

HOLTSFORD GILLILAND
HIGGINS HITSON & HOWARD, P. C.
Post Office Box 4128
Montgomery, Alabama 36103-4128
(334) 215-8585

                                       /s/ Milton C. Davis
                                       Milton C. Davis DAV035

OF COUNSEL:

Milton Davis
304 North Main Street
P.O. Box 830509
Tuskegee, Alabama 36083
Davismiltonc@bellsouth.net

**CERTIFICATE OF SERVICE**

      I hereby certify that an exact copy of the foregoing instrument has been served (a) through the Court's e-filing system; (b) by placing a copy of same in the United States Mail, postage prepaid and properly addressed; and/or (c) by personal/firm e-mail to

Barbara H. Agricola
Algert S. Agricola, Jr.
Agricola Law, LLC
127 South 8th Street
Opelika, Alabama 36804

Levy Kelly
160 Stone Park Blvd, Apt. 2409
Pike Road, Alabama 36063

                                       /s/ Rick A. Howard
                                       OF COUNSEL